## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

NORFOLK AND WESTERN RY. CO. V. MACH AND OTHERS.

January 16, 1919.

1. DEMURRER TO THE EVIDENCE—*Rule as to the Evidence.*—On a demurrer to the evidence the demurrant is considered as admitting the truth of all his adversary's evidence and all just inferences that can be properly drawn therefrom by the jury, and as waiving all of his own evidence which conflicts with that of his adversary, or which has been impeached, and all inferences from his own evidence (although not in conflict with his adversary's) which do not *necessarily* result therefrom.

2. FIRES—*Demurrer to the Evidence—Conflicting Theories of Origin of Fire—Case at Bar.*—In the instant case an action to recover damages to plaintiff's property from a fire alleged to have been set out from one of defendant company's engines, the controlling question was whether the fire originated on defendant's right of way, and was it set out by one of its engines or from a camp fire built by tramps. One of the plaintiffs testified positively that he saw the fire start from a coal thrown out by a passing engine. There was a demurrer to the evidence.

   *Held:* That in the face of this testimony of plaintiffs under the demurrer to the evidence rule, the inference that the fire originated from the camp fire of the tramps must be rejected.

3. DEMURRER TO THE EVIDENCE.—*Qualification of the Rule.*—The instant case does not fall within the qualification of the demurrer to the evidence rule that "The court, however, is not obliged to accept as true what it knows judicially to be untrue, nor what, in the nature of things, could not have occurred in the manner and under the circumstances mentioned, nor which is not susceptible of proof."

Error to a judgment of the Circuit Court of Dinwiddie county, in an action of trespass on the case. Judgment for plaintiffs. Defendant assigns error.

*Affirmed.*

The opinion states the case.

32

*J. M. Townsend, W. B. McIlwaine* and *Theodore W. Reath* for the plaintiffs in error.

*Lassiter & Drewry* for the defendants in error.

WHITTLE, P., delivered the opinion of the court.

Defendants in error own seventy-five acres of woodland adjoining the south side of the right of way of the Petersburg Belt Line Railway, the property of plaintiff in error, the Norfolk and Western Railway Company. On April 18, 1916, the land was burned over by a fire alleged to have originated on the right of way of the Belt Line, and to have been set out by one of defendant's engines and communicated to the land in question.

Plaintiffs brought this suit to recover damages for the injury occasioned by the fire. At the conclusion of the testimony, defendant moved to exclude plaintiffs' evidence, and that motion having been overruled, demurred to the evidence. Whereupon, the jury returned a verdict assessing plaintiffs' damages at $800, subject to the opinion of the court upon the demurrer to the evidence. The court put plaintiffs upon terms either to accept a judgment for $600, or submit to a new trial. Plaintiffs elected to accept the lesser sum, and the court overruled the demurrer to the evidence and rendered judgment for $600, to which judgment this writ of error was allowed.

[1, 2] The controlling question is whether the fire originated on defendent's right of way, and was it set out by one of its engines or from a camp fire built by tramps? That question must be resolved in the light of the oft-repeated and familiar rule applicable to a demurrer to the evidence— that is to say: "The demurrant is considered as admitting the truth of all his adversary's evidence and all just inferences that can be properly drawn therefrom by the jury,

and as waiving all of his own evidence which conflicts with that of his adversary, or which has been impeached, and all inferences from his own evidence (although not in conflict with his adversary's) which do not *necessarily* result therefrom." Burks' Pl. & Pr., 489.

These two conflicting theories of the origin of the fire were submitted to the jury by the respective litigants. That on behalf of defendant being, as indicated, that the fire started from a camp fire kindled by tramps at a pine stump on the south side of the right of way, 281 feet west of the culvert, and 1712 feet west of Mach's private bridge referred to in the evidence. So the fact appears that the pine stump was 464 yards west of where the fire started according to plaintiffs' evidence. Witnesses for defendant testified that the camp fire was seen as early as 6:30 A. M. on the day of the fire, and afterwards about 10 or 11 o'clock, while the tramps were still present. It was shown that the season was unusually dry, and that on the day of the fire a high southeast wind was blowing from the direction of the burning stump toward plaintiffs' wood-land.

Defendant also introduced its train sheet to show that on that day no train passed over the Belt Line between 10:28 A. M. and 1:14 P. M. There was no direct evidence, however, that the fire was communicated from the tramp camp fire to plaintiffs' woods; but that conclusion is rested upon the inference sought to be drawn from the foregoing evidence.

Opposed to that theory is the positive testimony of an eyewitness, Voclav Mach, Sr., one of the plaintiffs. He was part owner of the burnt tract, and also rented and cultivated a forty-acre field on the opposite side of the railway. He testified in substance that on the morning of April 18, 1916, he was plowing in the rented field; that between 11 and 12 o'clock he took his team out for dinner and set out for his home; that when he reached his private bridge

crossing the railroad he saw a long freight train coming, moving in the direction of Petersburg, and hurried across the bridge so that it would not catch him. Just after he had crossed the bridge and the train had passed the fire started; he saw it when it first started in a patch of grass on the right of way about 200 yards from the bridge; he saw it catch from a large spark or coal from the engine, and he saw no smoke or fire until after the train had passed. The fire then crossed the fence from the right of way into plaintiff's woods; about a quarter to 12 o'clock, after he had put his team in the stable, he discovered the fire in the woods; he did not stay to eat his dinner but ran to fight the fire. The testimony of several other witnesses corroborates that of Mach, that the fire started on the right of way east of the culvert, and that no smoke or fire was seen until after the train had passed that point. In the face of this testimony, under the demurrer to evidence rule, the inference that the fire originated from the camp fire at the pine stump must be rejected; for under the rule invoked the defendant waives all inferences from his own evidence that are in conflict with his adversary's.

[3] Defendant, however, seeks to escape the drastic effect of this doctrine by bringing its case within the qualification that "The court, however, is not obliged to accept as true what it knows judicially to be untrue, nor what, in the nature of things, could not have occurred in the manner and under the circumstances mentioned, nor which is not susceptible of proof."

Taken in its entirety, the testimony of Mach bears the test to which plaintiff in error would have us subject it. Even if it be conceded that he was in error in saying that at midday he saw a live cinder or large spark emitted from the engine fall upon and ignite the dry grass on the right of way, certain it is that there is nothing impossible of belief in his statement that from the vantage point of the

bridge above, he could see the smoke and flame from a fire kindled from such source in the combustible material on the right of way at the distance of two hundred yards. It is matter of common observation that fires thus kindled in an old field, or on a railroad right of way covered with "weeds, dry grass, decayed timber and other combustible material would readily be discernible under the conditions testified to by this witness. It must also be remembered that he is a Bohemian and cannot speak English. He had to testify through the medium of an interpreter; and it is hardly to be expected that in details the translation of his evidence by the interpreter would be as coherent and clear as if spoken by him in his own tongue. Nevertheless, in essentials, his testimony concerning the origin and location of the fire, and that it was discovered for the first time shortly after the locomotive had passed that point, was, as we have seen, substantiated by other witnesses.

· Upon the whole case, our conclusion is that the judgment of the circuit court is without error, and must be affirmed.

*Affirmed.*